# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MARK RICHARD**                                      **CIVIL ACTION**

**VERSUS**                                             **CASE NO. 17-9703**

**ST. TAMMANY PARISH SHERIFF'S**                      **SECTION: "G"(1)**
**DEPARTMENT**

## ORDER AND REASONS

Before the Court is Plaintiff Mark Richard's ("Plaintiff") Motion for Attorney's Fees.[1] In the motion, Plaintiff requests that the Court award him attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 2000e-5(k) as the prevailing party in his Title VII of the Civil Rights Act of 1964 ("Title VII") action against Defendant Sheriff Randy Smith ("Defendant").[2] Defendant filed an opposition to the Motion for Attorney's Fees.[3] Plaintiff replies in further support of the motion.[4] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion in part, denies it in part, and awards Plaintiff $198,476.88 in attorney's fees and costs.

---

[1] Rec. Doc. 291.

[2] Rec. Doc. 291-1 at 1. Plaintiff moves for attorney's fees as a prevailing party on his Title VII claim pursuant to 42 U.S.C. § 1988. However, a prevailing party under Title VII may move for attorney's fees pursuant to 42 U.S.C. § 2000e-5(k). Both statutes contain the same language that a "court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. §§ 1988(b), 2000e-5(k).  Both statutes allow a court to include expert fees as part of the attorney's fee. *See id.*

[3] Rec. Doc. 293.

[4] Rec. Doc. 302.

1

## I. Background

On September 27, 2017, Plaintiff sued the St. Tammany Parish Sheriff's Department, contending that it: (1) subjected him to a sexually hostile work environment, in violation of Title VII; (2) terminated his employment in retaliation for his complaints of a sexually hostile work environment, in violation of Title VII; (3) subjected him to age-based harassment, in violation of the Age Discrimination in Employment Act ("ADEA"); (4) retaliated against him for his complaints of an ageist hostile work environment, in violation of the ADEA; and (5) violated the Americans with Disabilities Act ("ADA").[5] The case was initially allotted to Judge Martin L.C. Feldman.

On December 7, 2017, the Sheriff's Department moved to dismiss the complaint, contending that the department is not an entity capable of being sued.[6] Thereafter, Plaintiff amended the complaint to name Sheriff Smith as the sole defendant, rendering the motion to dismiss moot.[7] Defendant then moved to dismiss the amended complaint for failure to state a claim.[8] In an Order and Reasons dated May 3, 2018, Judge Feldman granted the motion to dismiss, in part, as to the ADA claim, and denied the motion, in part, as to the sexual harassment and retaliation claims under Title VII, as well as to the age-based harassment and retaliation claims under the ADEA.[9]

On March 13, 2019, Defendant moved for summary judgment, contending that no genuine

---

[5] Rec. Doc. 1.

[6] Rec. Doc. 5.

[7] Rec. Docs. 20, 22.

[8] Rec. Doc. 27.

[9] Rec. Doc. 35.

issue of material fact existed concerning Plaintiff's remaining claims.[10] On April 17, 2019, Judge Feldman denied the motion for summary judgment, finding that there were "serious disputed fact questions that turn upon the credibility of witnesses."[11]

On July 6, 2021, Plaintiff filed a motion for partial summary judgment arguing that there was "no genuine issue of material fact regarding his retaliatory discharge from employment."[12] On July 21, 2021, Judge Feldman denied the motion for partial summary judgment, again finding that "significant questions of fact turning largely on witness credibility make summary judgment 'patently inappropriate.'"[13] On January 31, 2022, the case was reallotted to the undersigned Chief Judge following the passing of Judge Feldman.[14]

After a jury found in favor of Plaintiff on his Title VII retaliation claim, but in favor of Defendant on all other claims,[15] the Court entered a judgment in favor of Plaintiff in the amount of $134,157.00 on July 15, 2022.[16] Defendant has appealed the judgment to the Fifth Circuit[17] and Plaintiff has cross-appealed.[18]

On July 19, 2022, the Court granted Plaintiff an extension of time until August 19, 2022,

---

[10] Rec. Doc. 58.

[11] Rec. Doc. 76.

[12] Rec. Doc. 136.

[13] Rec. Doc. 142.

[14] Rec. Doc. 170.

[15] *See* Rec. Doc. 282.

[16] Rec. Doc. 284.

[17] Rec. Doc. 288.

[18] Rec. Doc. 298.

to file the Motion for Attorney's Fees.[19] On August 19, 2022, Plaintiff filed the instant motion for Attorney's Fees.[20] On August 30, 2022, Defendant filed an opposition.[21] On September 7, 2022, Plaintiff replied in further support of the motion.[22]

## II. Parties' Arguments

### A.   *Plaintiff's Arguments in Support of the Motion for Attorney's Fees*

In support of the instant motion, Plaintiff requests that the Court fix the amount of attorney's fees and expenses at $590,080.00.[23] In support of this total, Plaintiff submits: (1) the fee application of John O. Pieksen, Jr., a partner at the law firm Bagneris, Pieksen & Associates, LLC, and the lead attorney for Plaintiff in this civil action, listing his work performed from September 14, 2017, through August 19, 2022 in this matter and alleging a fee of $415,500.00 for his services;[24] (2) the fee application of Michael G. Bagneris, a partner at the law firm Bagneris, Pieksen & Associates, LLC, listing his work performed from January 1, 2020, through August 19, 2022 in this matter and alleging a fee of $170,250.00 for his services;[25] and (3) a "Cost/Expense Application" listing the costs incurred in this matter from January 1, 2020, through August 19, 2022, and alleging costs of $4,330.00.[26]

---

[19] Rec. Doc. 287.

[20] Rec. Doc. 291.

[21] Rec. Doc. 293.

[22] Rec. Doc. 302.

[23] *See* Rec. Docs. 291-4 at 16, 291-5 at 6, 291-6 at 1.

[24] Rec. Doc. 291-4.

[25] Rec. Doc. 291-5.

[26] Rec. Doc. 291-6.

Plaintiff also advances four arguments in support of the motion. First, Plaintiff argues that the requested billing rates of $600.00 per hour for Mr. Bagneris and $500.00 per hour for Mr. Pieksen are reasonable because "top-level partners such as Plaintiff's counsel commanded $400-$450 per hour in 2009" and so the proposed rates reflect 2–3% annual inflation.[27] Furthermore, Plaintiff avers that "three [] years ago, this Court awarded $325.00 per hour to an attorney with 15 years of labor and employment law experience."[28] Thus, in comparison, Plaintiff contends that "[t]here should be no doubt that both [Mr. Pieksen and Mr. Bagneris] are qualified to command top-level partners' rates" given Mr. Pieksen's 30 years of significant employment law experience and Mr. Bagneris's 40 years of civil rights litigation experience and time on the Louisiana Judiciary.[29]

Second, Plaintiff argues that counsel exhibited "considerable 'billing judgment', as they include significant reductions to account for 'unproductive, excessive, or redundant hours.'"[30] Plaintiff avers that he has eliminated time entries for "any attorney travel time . . ., claims that were voluntarily dismissed, . . . [and] administrative time and/or paralegal time."[31] Plaintiff also asserts that he has "collapsed all daily events into one time entry" and "did not bill a '.25' for each email, text or phone call on days involving multiple communications."[32] Plaintiff contends that,

---

[27] Rec. Doc. 291-1 at 8 (citing *Oreck Direct, LLC v. Dyson, Inc.*, No. 07-2744, 2009 WL 961276, at *3–7 (E.D. La. Apr. 7, 2009).

[28] *Id*. (citing *Sanchez v. Pizzati Enters., Inc.*, No. 17-9116, 2018 WL 3954866, at *3–4 (E.D. La. Aug. 16, 2018) (Brown C.J.)).

[29] *Id*. at 8–9.

[30] *Id*. at 9.

[31] *Id*.

[32] *Id*. at 9–10.

rather, he billed for two hours per month for emails and one hour per month for phone calls and texts.[33] Finally, Plaintiff asserts that, should Defendant challenge the reasonableness of Plaintiff's time entries, Plaintiff reserves the right to itemize and seek reimbursement for such costs, revise time entries to reflect and bill for each client communication, and seek discovery on how much Defendant's counsel has billed their client.[34]

Third, Plaintiff argues that Defendant should not benefit from its "steadfast refus[al] to objectively assess the relative merits of this case and engage in good-faith efforts to resolve it short of trial."[35] Plaintiff avers that the April 25, 2019 settlement conference[36] "was unsuccessful, even after the Court denied all four contested aspects of [D]efendant's motion for summary judgment."[37] Plaintiff also contends that Defendant "would not even participate in a subsequently-scheduled settlement conference in 2022, on the eve of trial," and initially refused to even agree "to a stipulation as to lost wages that adopted Defendant's expert's wage calculation."[38] Thus, Plaintiff requests "that, at a minimum, all time entries for all work done on this matter after April 25, 2019 should be reimbursed in full."[39]

Fourth, Plaintiff argues that he "obtained substantial relief, as evidenced by the jury verdict and damage award that exceeded the value of the amount Plaintiff was willing to accept by way

---

[33] *Id.* at 10.

[34] *Id.*; *Id.* at 10, n.3.

[35] *Id.* at 10.

[36] *See* Rec. Doc. 96.

[37] Rec. Doc. 291-1 at 10.

[38] *Id.*

[39] *Id.* at 10–11.

of settlement."[40] Plaintiff also contends that the jury awarded him "50% more compensatory damages than Plaintiff's threshold request."[41] Finally, Plaintiff avers that his successful defense against summary judgment, which contained "numerous intertwined common fact issues," demonstrates that "there should be no legitimate dispute that Plaintiff obtained substantial relief."[42] Thus, Plaintiff asks the Court to grant the instant motion and enter an award of $590,080.00 in attorney's fees and costs.[43]

**B.      Defendant's Arguments in Opposition to the Motion for Attorney's Fees**

Defendant advances five arguments in opposition to the instant motion.[44] First, Defendant argues that a reduction in Plaintiff's requested attorney's fees is warranted based on "the long and complicated procedural history of this case, all of which was completely outside of the Defendant's responsibility or control."[45] Defendant avers that trial in this matter was continued "seven total times over the course of four years" due to the Court's granting Plaintiff's uncontested motions to continue trial and additional delays due to COVID-19.[46] Thus, Defendant argues that Plaintiff's contention that the length and cost of this litigation is due to Defendant's refusal to settle "is absurd," given that these continuances "sometimes demanded additional discovery and required

---

[40] *Id.* at 11.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *See* Rec. Doc. 293.

[45] *Id.* at 2.

[46] *Id.* at 3–4.

repeated trial preparations and other administrative tasks."[47] Defendant also asserts that he had no obligation to settle the case because liability was and continues to be highly disputed, but "Defendant nonetheless considered reasonable settlement proposals."[48] Defendant contends that the Court's denial of Defendant's motion for summary judgment and the jury's verdict likewise "have no bearing on the reasonableness of Defendant's decision to take this matter to trial."[49] Finally, Defendant avers that he "should not be penalized for his counsel's zealous advocacy," which is a counsel's duty and a basic tenet of the adversarial legal system, because there is no evidence that such advocacy exceeded permissible bounds.[50] Rather, Defendant asserts that it was "Plaintiff's unreasonable demands which ultimately doomed any negotiations."[51] Thus, Defendant concludes that Plaintiff's request for "an excessive fee award should be denied."[52]

Second, Defendant argues that Plaintiff does not show that the billing rates requested are reasonable.[53] Defendant avers that Plaintiff was required to show that "his requested hourly rates are in line with those prevailing in this community for similar services by lawyers of reasonably comparable skill and experience."[54] Defendant asserts that Plaintiff does not offer affidavits from

---

[47] *Id.* at 4.

[48] *Id.* at 4–5. Defendant also notes that it was successful on three of Plaintiff's four claims at trial, demonstrating that its refusal to settle was not in bad faith. *Id.*

[49] *Id.* at 5.

[50] *Id.*

[51] *Id.* at 5–6.

[52] *Id.* at 6.

[53] *See* Rec. Doc. 6–7.

[54] *Id.* at 7 (citing *Bardales v. Fontana & Fontana, LLC*, No. 19-340, 2021 WL 2328382, at *2–3 (E.D. La. June 8, 2021)) (emphasis omitted).

other attorneys in the Eastern District of Louisiana regarding market rates, but, "instead, relies only upon his own assertions that his suggested rates are reasonable."[55] Thus, Defendant concludes that Plaintiff "did not meet his burden to show that his requested hourly rates are [reasonable]."[56]

Third, Defendant argues that the *Johnson* factors weigh in favor of reducing Plaintiff's request for attorney's fees.[57] Defendant avers that, under the first *Johnson* factor, a reduction is warranted because, despite the length of this litigation, "the added work caused by the many continuances was largely administrative, as the facts of this case changed little over time, if at all."[58] Defendant asserts that, under the second *Johnson* factor, there was nothing novel about Plaintiff's discrimination and retaliation claims and so "Plaintiff's counsel should not be overly compensated for routine legal work concerning unremarkable facts."[59] Defendant contends that, under the third *Johnson* factor, "this case did not require an advanced level of skill to perform the legal services properly."[60] Defendant argues that, under the fourth *Johnson* factor, "Plaintiff's counsel has not alleged . . . that he has lost any business by undertaking this case."[61] Defendant

---

[55] *Id.*

[56] *Id.*

[57] *Id.* at 5–6 (citing *Johnson v. Ga. Highway Express, Inc.,* 388 F.2d. 714, 717–719 (5th Cir. 1974)). The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

[58] Rec. Doc. 293 at 8–9.

[59] *Id.* at 9.

[60] *Id.*

[61] *Id.*

asserts that Plaintiff has provided no evidence to suggest a customary fee or the nature of the fee under the fifth and sixth *Johnson* factors.[62] Defendant contends that the seventh *Johnson* factor does not apply to this case because counsel were not brought in at a late stage in proceedings.[63] Defendant also avers that, under the eighth *Johnson* factor, the attorney's fees requested should be reduced because "Plaintiff was only awarded a $134,157.00 judgment, whereas his attorneys now ask for a fee of nearly $600,000."[64]

Furthermore, Defendant argues that, under the ninth *Johnson* factor, "Plaintiff's counsel cannot rest on years of experience in justifying such a high fee award."[65] Defendant asserts that, under the tenth *Johnson* factor, "Plaintiff's counsel has not alleged . . . that he has faced any hardship in his community because of his decision to undertake this case."[66] Defendant contends that, under the eleventh *Johnson* factor, a reduction in the fee is warranted because "Plaintiff's counsel has made no argument seeking to justify the requested fee award based on his relationship with the client."[67] Finally, Defendant avers, under the twelfth *Johnson* factor, that Plaintiff has provided no support for the attorney's fees requested based on similar cases.[68] Thus, Defendant concludes that, based on the *Johnson* factors, the court should not only decline to increase the fee

---

[62] *Id*. at 10.

[63] *Id*.

[64] *Id*. at 10–11 (citing *Johnson*, 488 F.2d at 718).

[65] *Id*. at 11 (citing *Johnson,* 488 F.2d at 719).

[66] *Id*.

[67] *Id*.

[68] *Id*. at 12.

award, but should considerably decrease it.[69]

Fourth, Defendant argues that the attorney's fees requested should be reduced because "Plaintiff received a favorable verdict on only one of his original five claims."[70] Refuting Plaintiff's argument that it would be challenging to allocate hours spent on each claim, Defendant avers that "a claim of sexually hostile work environment, a claim of age discrimination, and two claims of retaliation are distinct claims based on entirely separate legal theories."[71] Defendant asserts that, regardless, it is "unreasonable to expect Defendant to pay such a large sum just to save Plaintiff's counsel the trouble of breaking down his time."[72] Defendant also contends that the Court should not follow the two cases Plaintiff cites to support his assertion that he obtained substantial relief because the Fifth Circuit in the first case affirmed a fee award of only $29,053.12[73] and the second case was an insurance claim decided by a Mississippi district court[74] that has not been widely followed.[75] Thus, Defendant concludes that Plaintiff's "fee award should be reduced by claim or by a reasonable equivalent."[76]

Fifth, Defendant argues that the requested attorney's fee award of nearly $600,000 is

---

[69] *Id*.

[70] *Id*. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983) (holding "that where the plaintiff achieved only limited success, the District Court should award only that amount of fees that is reasonable in relation to the results obtained").

[71] *Id*. at 13.

[72] *Id*. Defendant asserts that, if the task of breaking down Plaintiff's counsel's time as to each claim is unduly burdensome, it would be equally reasonable to divide the total attorney's fees by five. *Id*.

[73] *See Saldivar v. Austin Indep. Sch. Dist.*, 675 F. App'x 429, 431 (5th Cir. 2017).

[74] *See United States ex rel. Rigsby v. State Farm Fire and Cas. Co.*, No. 1:06-433, 2014 WL 12769371 (S.D. Miss. Feb. 21, 2014).

[75] Rec. Doc. 293 at 13–14.

[76] *Id*. at 14.

"plainly unreasonable" given the $134,157.00 judgment at trial.[77] Defendant avers that, in *Johnson*, the Fifth Circuit made clear that an award of attorney's fees under Title VII was not "for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest."[78] Thus, Defendant concludes that the Court should deny the Motion for Attorney's Fees.[79]

**C.**   ***Plaintiff's Arguments in Further Support of the Motion for Attorney's Fees.***

In reply, Plaintiff makes six arguments in further support of the instant motion. First, Plaintiff argues that Defendant "should not obtain a windfall reduction in the cost of this litigation" due to COVID-19, which was "totally beyond Plaintiff's causation or control, especially if [D]efendant paid its own counsel for the additional work required as a result of COVID-19."[80] Plaintiff also asks "that the Court require [D]efendant to produce all bills it received from defense counsel to verify if [D]efendant was billed for the 'additional discovery and repeated trial preparations' necessitated by COVID-19."[81] Finally, Plaintiff avers that Defendant could have settled this matter for a fraction of the jury verdict and judgment in 2019, prior to the onset of the COVID-19 pandemic, "and now should be held to account for the consequences of that decision."[82]

Second, Plaintiff argues that Defendant's "zealous advocacy" and lack of obligation to settle the case is irrelevant because "Defendant 'took its chances and vigorously defended the

---

[77] *Id.*

[78] *Id.* at 15 (quoting *Johnson*, 488 F.2d at 719).

[79] *Id.* at 17.

[80] Rec. Doc. 302 at 3.

[81] *Id.* at 2–3 (citing Rec. Doc. 293 at 4).

[82] *Id.* at 3.

lawsuit' but was unsuccessful and thus must pay for the attorney's fees incurred by Plaintiff as a result."[83] Plaintiff avers that much of the time and money spent on this case resulted from Defendant's refusal to settle—a "strategy which ultimately turned out to be ill-advised."[84] Plaintiff concludes that Defendant "now must bear the consequences of that ultimately misguided decision, as 'the defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'"[85]

Third, Plaintiff argues that Defendant's only challenge to Plaintiff's attorney's fees calculation of $590,080.00 regards the hourly rates requested, but "apparently overlooked, or chooses to ignore, the caselaw cited by Plaintiff as to reasonable market rates in this jurisdiction."[86] Plaintiff avers that "there is no requirement that Plaintiff offer (essentially self-serving) affidavits from other attorneys in lieu of specific judicial pronouncements."[87] Plaintiff also contends that Defendant "fails to offer any countervailing authority, including affidavits of counsel, on this issue."[88] Finally, Plaintiff contends that the hourly rate sought is not based only on the longevity of Plaintiff's counsel, but on their "considerable related expertise in this area of law."[89] Thus, Plaintiff concludes that the hourly rates requested are reasonable.[90]

---

[83] *Id*. (quoting *Needham v. Innerpac, Inc.*, No. 1:04-393, 2008 WL 5411638, at *4–5 (N.D. Ind. Dec. 24, 2008)).

[84] *Id*. at 4.

[85] *Id*. (quoting *Needham*, 2008 WL 5411638, at *4–5).

[86] *Id*. at 5.

[87] *Id*. at 6.

[88] *Id*.

[89] *Id*. at 7.

[90] *Id*.

13

Fourth, Plaintiff argues that Defendant's *Johnson* factor analysis is flawed.[91] Plaintiff avers that Defendant relies on *Johnson* factors that "were already taken into account" in the initial attorney's fees calculation.[92] Plaintiff also contends that "the amount of damages a plaintiff recovers is only one of many factors that a court must consider" and the attorney's fee award need not "be commensurate with the actual amount of dollars awarded to the plaintiff."[93]

Fifth, Plaintiff rebuts Defendant's arguments regarding each *Johnson* factor.[94] Plaintiff argues, under the first factor, that Defendant "has not challenged Plaintiff's exercise of billing judgment, nor objected to any of the specific, detailed time entries in Plaintiff's Exhibits, which already eliminated time related to administrative matters and adjusted the reasonable time entries accordingly."[95] Plaintiff avers, under the second factor, that "the mere absence of novel issues does not justify a downward adjustment."[96] Plaintiff contends that "[D]efendant admits that no exceptional circumstances exist to warrant an adjustment" under the third, fourth, fifth, sixth, seventh or ninth *Johnson* factor.[97] Plaintiff asserts that "[D]efendant claims, without any authority or specific rational, that a reduction is warranted" under the tenth and eleventh *Johnson* factors.[98] Finally, Plaintiff avers that, under the twelfth *Johnson* factor, contrary to Defendant's assertion,

---

[91] *See id.*

[92] *Id.* at 8.

[93] *Id.* (citing *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 661–64 (5th Cir. 2002)).

[94] *Id.*

[95] *Id.* at 8.

[96] *Id.* at 9.

[97] *See id.* at 9–10.

[98] *Id.* at 10.

Plaintiff has "provided multiple examples of awards in similar cases."[99]

Sixth, Plaintiff argues that a reduction in the fee award under the eighth *Johnson* factor—the "results obtained" factor—is not warranted because "Plaintiff obtained substantial relief."[100] Plaintiff avers that "[t]he mere fact that Plaintiff was not successful at trial on all claims does not require or even necessarily indicate that the fee award should be reduced based on the precise percentage of successful claims."[101] Plaintiff also contends that, because Defendant has not challenged Plaintiff's billing judgment, this *Johnson* factor has been considered in the initial calculation and so should not be considered.[102] Plaintiff also analogizes to *Denner v. Texas Dep't of Criminal Justice*,[103] where the Texas district court found that no downward adjustment was warranted because Plaintiff won lost wages and compensatory damages.[104] Plaintiff argues that, like the plaintiff in *Denner*, Plaintiff was very successful in his claims and thus won substantial relief even though he did not succeed on all claims.[105] Finally, Plaintiff avers that all of his claims involve "a common core of facts and are based on related legal theories" such that "this Court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'"[106] Therefore, Plaintiff concludes that he obtained

---

[99] *Id.* at 11.

[100] *Id.*

[101] *Id.*

[102] *Id.* at 12.

[103] No. 05-184, 2007 WL 294191, at * 4–5 (W.D. Tex. Jan. 29, 2007).

[104] Rec. Doc. 302 at 12.

[105] *Id.* at 12–13.

[106] *Id.* at 13 (quoting *Hensley*, 461 U.S. at 435).

substantial relief and so the Court should grant the instant motion.[107]

### III. Law and Analysis

Pursuant to 42 U.S.C. § 2000e-5(k), "[i]n any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs."[108] A plaintiff that prevails under Title VII "ordinarily is to be awarded attorney's fees in all but special circumstances."[109] The parties do not contest that Plaintiff is entitled to attorney's fees under Title VII. However, the parties disagree on the amount of attorney's fees to which Plaintiff is entitled.

Thus, the Court must determine the reasonable fees and costs to award Plaintiff for prevailing on his Title VII retaliation claim. Reasonable attorney's fees are calculated using the "lodestar" method.[110] Under this method, "the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers."[111] "[T]here is a strong presumption that the lodestar figure is reasonable."[112] However, after calculating the lodestar, a district court may decrease or enhance the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[113] The lodestar may not be adjusted due to a *Johnson*

---

[107] *Id*. at 13–14.

[108] 28 U.S.C. § 2000e-5(k).

[109] *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 418 (1978).

[110] *Rutherford v. Harris Cty., Texas*, 197 F.3d 173, 192 (5th Cir. 1999).

[111] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)).

[112] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)

[113] *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are: (1) the time and labor required to represent the

factor, however, if the creation of the lodestar award already took that factor into account.[114] Such reconsideration is "impermissible double-counting."[115]

Here, Plaintiff requests a total award of $590,080.00.[116] This requested award consists of $585,750.00 in attorney's fees and an additional $4,330.00 in expenses.[117] The fee applications indicate that partner and lead counsel John O. Pieksen, Jr. billed 831 hours and partner Michael G. Bagneris billed 283.75 hours.[118] These fee applications also indicate hourly billing rates of $500.00 for partner and lead counsel John O. Pieksen, Jr. and $600.00 for partner Michael G. Bagneris.[119]

## A.    *The Number of Hours*

"[T]he first step in determining reasonable attorney's fees is an evaluation of the number of hours reasonably expended."[120] "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[121] When an attorney or paralegal performs a task that could be handled by clerical staff, the opponent should

---

client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

[114] *Saizan v. Delta Concrete Products Co.,* 448 F.3d 795, 800 (5th Cir. 2006) (citation omitted).

[115] *Id.*

[116] *See* Rec. Docs. 291-4 at 16, 291-5 at 6, 291-6 at 1.

[117] *See id.*

[118] Rec. Doc 291-4 at 16; Rec Doc. 291-5 at 6.

[119] Rec. Doc 291-4 at 16; Rec Doc. 291-5 at 6.

[120] *Louisiana Power*, 50 F.3d at 324.

[121] *Id.* (quotation marks and citations omitted).

not be charged.[122] Tasks that are purely clerical in nature include faxing, mailing, filing and delivering legal documents.[123] Likewise, travel time is often reduced by 50% of the attorney's rate absent evidence that any legal work was accomplished during travel time.[124] "Charges for excessive, duplicative, or inadequately documented work must be excluded."[125] The party seeking fees must demonstrate the exercise of billing judgment, which refers to the usual practice of writing off unproductive, excessive, or redundant hours.[126]

In support of the motion, Plaintiff offers a fee application, which is the record for professional services performed by each attorney in this matter.[127] The documentation reflects the fees incurred by Plaintiff in litigating the above captioned matter for which Plaintiff seeks an attorney's fee award.[128] The documentation contains information on the tasks performed, by whom they were performed, the date they were performed, the time expended to accomplish that task, and the applicable hourly rates charged.[129] In support of the motion, Plaintiff states that he exercised billing judgment because he does not include "any attorney travel time, . . . has also eliminated any time entries for claims that were voluntarily dismissed, . . . further adjusted the fee

---

[122] *Kuperman v. ICF Int'l*, No. 08- 565, 2009 WL 10737138, at *9 (E.D. La. Oct. 13, 2009).

[123] *See Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 710–11 (E.D. La. 2001); *Kuperman*, 2009 WL 10737138, at *9 (reducing hours billed for attorney time spent on clerical matters (e.g., e-filing documents, copying and Bates-numbering documents)).

[124] *In re Babcock & Wilcox Co.,* 526 F.3d 824, 828 (5th Cir. 2008) (citing cases).

[125] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993)).

[126] *Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996)

[127] *See* Rec. Docs. 291-4, 291-5.

[128] *See* Rec. Doc. 291-1 at 9.

[129] *See* Rec. Docs. 291-4, 291-5.

applications to reflect only issue-specific internal conference on counsel, [and] has not billed for administrative time and/or for paralegal time."[130] Furthermore, Plaintiff states that he billed two hours per month for emails and one hour per month for phone calls and texts, "which results in an appreciable discount in the time spent on such communications."[131]

Plaintiff is represented by the law firm Bagneris, Pieksen & Associates, LLC. Two attorneys within the firm worked on this matter. The fee application indicates that partner and lead counsel John O. Pieksen, Jr. billed 831 hours and partner Michael G. Bagneris billed 283.75 hours. Defendant argues that the seven continuances of the trial led to administrative tasks that increased the cost of litigation.[132]

After careful review of the fee applications, the Court finds several entries to be problematic. Specifically, the fee application for Mr. Pieksen includes entries for 91.75 hours spent to "finalize and file," "prepare and file," or "prep and file" documents with the Court.[133] Time spent on clerical matters such as filing documents with the court should not be charged to Defendant.[134] The Court recognizes that time spent finalizing and preparing documents may include, at least partially, reviewing and editing the documents, which would be chargeable to Defendant as legal work. However, without any way to disentangle legal from administrative work

---

[130] Rec. Doc. 291-1 at 9.

[131] *Id.* at 10.

[132] Rec. Doc. 293 at 4.

[133] *See* Rec. Doc. 291-4 at 1–16.

[134] *See Kuperman*, 2009 WL 10737138, at *9.

in these mixed time entries, the Court reduces these time entries by 50%. Therefore, the hours billed by Mr. Pieksen is reduced by 45.875 hours to 785.125 hours.[135]

After further careful review of the fee applications, the Court finds that Plaintiff exercised billing judgment with respect to the remainder of the billing entries. The number of hours is reflective of litigation that spanned nearly five years, was the subject of seven continuances, and ultimately went to trial. Furthermore, Plaintiff does not include attorney travel time, . . . further adjusted the fee applications to reflect only issue-specific internal conference on counsel, [and] has not billed for administrative time and/or for paralegal time."[136] Plaintiff states that he billed two hours per month for emails and one hour per month for phone calls and texts, "which results in an appreciable discount in the time spent on such communications."[137]  Defendant does not dispute that Plaintiff exercised billing judgment or argue that any specific time entries should be excluded from the lodestar calculation.

Defendant further argues that the Lodestar figure should be reduced because Plaintiff did not achieve substantial relief in succeeding on only one of his five claims.[138] The Fifth Circuit has recognized that unsuccessful litigation efforts cannot be recognized as reasonable and must be deducted.[139] If recoverable fees can be segregated from unrecoverable fees, even if difficult, the

---

[135] 50% of 91.75 hours is 45.875 hours.

[136] Rec. Doc. 291-1 at 9.

[137] *Id.* at 10.

[138] Rec. Doc. 293 at 12.

[139] *See Leroy v. City of Houston*, 906 F.2d 1068, 1084 (5th Cir. 1990); *see also Jason D.W.* v. *Houston Indep. Sch. Dist.*, 158 F.3d 205, 211 (5th Cir. 1998).

party seeking recovery must segregate unrecoverable fees.[140] When the prevailing party incurs costs for a claim that involves a common core of facts or will be based on legal theories related to another claim, and counsel's time is devoted to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, the court need not segregate fees.[141] Federal courts authorize a percentage reduction of overall fees when a fee award is due on a claim that is so intertwined with another claim that the time cannot be segregated.[142]

Plaintiff argues that he "obtained substantial relief, as evidenced by the jury verdict and damage award that exceeded the value of the amount Plaintiff was willing to accept by way of settlement."[143] Plaintiff also argues that all of his claims involve "a common core of facts and are based on related legal theories" such that "this Court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[144] Defendant argues that the hours should be segregated because "a claim of sexually hostile work environment, a claim of age discrimination, and two claims of retaliation are distinct

---

[140] *United States for Varco Pruden Bldgs.* v. *Reid & Gary Strickland Co.*, 161 F.3d 915, 922 (5th Cir. 1998)

[141] *Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 528 (5th Cir. 2001); *see also Varco*, 161 F.3d at 919–20 (holding that a party who won claim for costs of extra work but lost claims for delay damages, fraud and misrepresentation was not required to segregate fees for the successful versus unsuccessful claims because the claims arose out of the same transaction and were so interrelated that their prosecution or defense entailed proof or denial of essentially the same facts).

[142] *See, e.g., Navigant Consulting, Inc. v. Wilkinson,* No. 3:02-2186, 2006 WL 2437882, at *2 (N.D. Tex. Aug. 22, 2006) (reducing fees by 40% where successful claims were inextricably intertwined with unsuccessful claims).

[143] Rec. Doc. 291-1 at 11.

[144] *Id.* at 13 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

claims based on entirely separate legal theories."[145] Alternatively, Defendant argues that Plaintiff's "fee award should be reduced by claim or by a reasonable equivalent."[146]

The Court finds that the number of hours should be reduced, given that Plaintiff was only successful in his Title VII retaliation claim, and unsuccessful on his four other claims. The Court finds Plaintiff's arguments as to why the fee should not be reduced unpersuasive. In arguing that Plaintiff obtained substantial relief, Plaintiff relies on a Mississippi insurance case[147] and an unpublished Fifth Circuit case involving a much smaller fee award than the $590,080.00 sought by Plaintiff.[148] These cases are easily distinguishable from the instant matter. Plaintiff also relies on *Denner v. Texas Dep't of Criminal Justice*, where the Texas district court granted the plaintiff's request for $138,977.50 in attorney's fees after plaintiff succeeded on her Title VII retaliation claim, for which a jury awarded her $120,000 in damages, but failed in her Title VII harassment and state law claims.[149] However, in *Denner*, to determine whether a reduction was warranted based on plaintiff's partial success, the Texas district court "compare[d] the result obtained with the damages sought, as well as the fees sought in relation to the result obtained" and reasoned that a downward adjustment was not warranted in part because the lodestar amount was "not disproportionate" to the damages awarded.[150] *Denner* is easily distinguishable from the instant

---

[145] Rec. Doc. 293 at 13.

[146] *Id*. at 14.

[147] *See* Rec. Doc. 291-1 at 6 (citing *U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06-433, 2014 WL 691500 (S.D. Miss. Feb. 21, 2014)).

[148] *See id.* (citing *Saldivar v. Austin Indep. Sch. Dist.*, No. 16-50372, 2017 WL 117145, at *2 (5th Cir. Jan 11, 2017) (affirming a fee award of $29,053.12).

[149] No. 05-184, 2007 WL 294191, at *1 (W.D. Tex. Jan. 29, 2007).

[150] *Id*. at *5.

matter because the lodestar amount here is clearly disproportionate to the damages award at trial given that the $590,080.00 attorney's fee award requested is over four times greater than the $134,157.00 judgment obtained. Therefore, the Court finds Plaintiff's reliance on *Denner* unpersuasive.

Plaintiff also argues that he obtained substantial relief because "the jury awarded Plaintiff 50% more compensatory damages than Plaintiff's threshold request."[151] In reality, at trial, Plaintiff requested compensatory damages of $60,000 for each claim before the jury. In other words, at trial, Plaintiff sought $240,000 in compensatory damages, in addition to stipulated lost back pay of $44,157,[152] for a total award of $284,157.00. Therefore, because Plaintiff obtained a judgment of only $134,157.00,[153] Plaintiff obtained just less than 50% of the relief sought at trial. Thus, the Court finds that Plaintiff did not obtain substantial relief.

However, the Court agrees that the claims involved a common core of facts, making it difficult to divide the hours expended on a claim-by-claim basis. Although Defendant states that the claims are "based on entirely separate legal theories," these claims all relate to a common set of facts—the events leading to the termination of Plaintiff's employment at the St. Tammany Parish Sheriff's Office. Thus, since the unsuccessful claims share a common core of facts with the successful claim such that they cannot be disentangled, the Court must shift its focus to the relief obtained and adjust the award accordingly.[154] Given that no precise formula exists for adjusting

---

[151] Rec. Doc. 291-1 at 11.

[152] Rec. Doc. 280-4.

[153] Rec. Doc. 284.

[154] *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 416 (5th Cir. 2022); *Hensley*, 461 U.S. at 436–37.

the award, the Court is permitted to simply reduce the award by a percentage to account for Plaintiff's limited success.[155] The Court finds that a 50% reduction in hours is warranted after comparing the Judgment with the relief sought and the attorney's fees requested.[156] Accordingly, for purposes of the lodestar calculation, Mr. Pieksen worked 392.5625 hours and Mr. Bagneris worked 141.875 hours.[157]

### B.    The Hourly Rates

The second step of the analysis is to determine a reasonable hourly rate for each attorney. "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command."[158] It is the plaintiff's burden to "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation."[159]

As discussed above, Plaintiff offers fee applications, which are the records for professional services performed by each attorney in this matter. These applications indicate hourly billing rates of $500 for partner and lead counsel John O. Pieksen, Jr. and $600 for partner Michael G.

---

[155] *Id*. at 438.

[156] *See Migis,* 135 F.3d at 1048 (5th Cir. 1998) ("We hold that the district court abused its discretion by failing to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought."). *See also, e.g., Navigant Consulting,* 2006 WL 2437882, at *2.

[157] 50% of Mr. Pieksen's 785.125 chargeable hours included in the fee application is 392.5625 hours. 50% of Mr. Bagneris's 283.75 chargeable hours included in the fee application is 141.875 hours.

[158] *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000) (quotations and citation omitted).

[159] *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cty., Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985).

Bagneris.[160] Mr. Pieksen has approximately 30 years of experience in employment law.[161] Mr.

Bagneris has approximately 45 years of civil rights litigation experience, including time as a

Louisiana state court judge.[162] Plaintiff states that, in 2009, "top-level partners such as Plaintiff's

counsel commanded $400-$450 per hour" and so the hourly rates reflect "[a]djusting those 2009

rates a mere 2-3% per annum."[163] Thus, Plaintiff argues that, given the experience of Mr. Pieksen

and Mr. Bagneris, "[t]here should be no doubt that both of Plaintiff's counsel are qualified to

command top-level partners' rates." [164] Defendant asserts that Plaintiff does not offer affidavits

from other attorneys in the Eastern District of Louisiana regarding market rates, but, "instead,

relies only upon his own assertions that his suggested rates are reasonable."[165]

      The Court may reduce the hourly rate if it determines that the requested rate is not within

the range of prevailing market rates. Although Plaintiff does not offer affidavits from other

attorneys in the Eastern District of Louisiana, the Fifth Circuit makes clear that the district court

"is itself an expert on the question [of reasonable billing rates] and may consider its own

knowledge and experience concerning reasonable and proper fees and may form an independent

judgment either with or without the aid of testimony."[166] Nevertheless, although the Court

acknowledges that Plaintiff's counsel are entitled to top-level partner rates given their significant

---

[160] Rec. Doc. 291-4 at 1; Rec. Doc. 291-5 at 1.

[161] Rec. Doc. 291-1 at 8.

[162] *Id*. at 9.

[163] *Id*. at 8.

[164] *Id*. at 9.

[165] *Id*.

[166] *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940).

experience, Plaintiff does not justify awarding $500 and $600 hourly billing rates for Mr. Pieksen and Mr. Bagneris respectively.

Plaintiff cites a single Eastern District of Louisiana case, *Oreck Direct, LLC v. Dyson, Inc.*, in claiming that top-level partners "commanded $400-$450 per hour in 2009,"[167] and no cases to justify increasing those rates "2-3% per annum."[168] In *Oreck*, another court in the Eastern District of Louisiana awarded a $400 hourly rate to all Sullivan & Cromwell attorneys in a false advertising dispute between competitors in the vacuum cleaner industry.[169] The services provided in the instant employment discrimination case cannot be compared to the legal services that were required in *Oreck*. Thus, Plaintiff has failed to meet his burden to "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the relevant community for *similar services* . . ."[170] Therefore, after a review of recent attorney's fee awards in the Eastern District of Louisiana, the Court finds that top-level partners have typically commanded hourly billing rates of between $350 and $400.[171] Considering the significant experience and expertise of Plaintiff's counsel, the Court finds that $350 and $400 hourly billing rates are reasonable for Mr. Pieksen and Mr. Bagneris respectively.

---

[167] No. 07-2744, 2009 WL 961276, at *3-7 (E.D. La. Apr. 7, 2009).

[168] Rec. Doc. 291-1 at 8.

[169] *See Oreck*, 2009 WL 961276, at *1, *6.

[170] *Wheeler*, 752 F.2d at 1073 (emphasis added).

[171] *See, e.g., Bardales v. Fontana & Fontana, LLC*, No. 19-340, 2021 WL 2328382 (E.D. La. June 8, 2021) (awarding a partner with 45 years of litigation experience a $400 hourly rate); *McGee v. Tregre*, No. 18-3341, 2019 WL 3308324, at *4 (E.D. La. Feb. 11, 2019) (approving $375.00 an hour for attorney with 41 years' experience); *Batiste v. Lewis*, No. 17-4435, 2019 WL 1591951, at *3 (E.D. La. Apr. 12, 2019) (finding $375.00 per hour to be reasonable for a partner with 35 years of experience); *Adams v. City of New Orleans*, No. 13- 6779, 2015 WL 4606223, at *3 (E.D. La. July 30, 2015) (rate of $350 per hour reasonable for an attorney with 29 years of experience).

### C.    The Lodestar Calculation

In the final step, "the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers."[172]  In sum, the Court awards $137,396.88 for work performed by Mr. Pieksen (392.5625 hours at $350 per hour) and $56,750.00 for work performed by Mr. Bagneris (141.875 hours at $400 per hour).[173] Accordingly, the Court awards Plaintiff a total attorney's fee award of $194,146.88.

### D.    Adjustment to the Lodestar Calculation

After calculating the lodestar, a district court may decrease or enhance the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[174] The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account.[175] Such reconsideration is "impermissible double-counting."[176] A court should presume that the lodestar calculation is reasonable and should only modify it in exceptional circumstances.[177] Here, the Court finds that the circumstances of this case do not warrant an adjustment to the lodestar. The relevant factors

---

[172] *Migis*, 135 F.3d at 1047 (citing *Louisiana Power*, 50 F.3d at 324).

[173]  $137,396.88 + $56,750  = $194,146.88

[174]  *Black,* 732 F.3d at 502 (5th Cir. 2013) (citing *Johnson,* 488 F.2d at 717–19). The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

[175] *Saizan,* 448 F.3d at 800 (citation omitted).

[176] *Id.*

[177] *Watkins*, 7 F.3d 453, 457 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

27

that would warrant an increase or decrease are already accounted for in the Court's determination of the reasonable number of hours and the reasonable hourly rate. The Court has already factored the time and labor required to represent Plaintiff, along with Plaintiff's limited success and the reasonableness of the award sought given the relief obtained at trial in reducing the number of hours included in the lodestar calculation. The Court has also factored the experience, reputation, and ability of the attorneys in reducing the hourly billing rates included in the lodestar calculation. Adjusting the lodestar based on these same factors "would be impermissible double counting."[178]

The parties' other arguments for adjusting the lodestar calculation are unavailing. Regarding the second *Johnson* factor, the novelty and complexity of the matter is presumably fully reflected in the lodestar amount and so should not serve as an independent basis for adjusting the award.[179] Furthermore, the parties do not provide evidence of exceptional circumstances that would warrant a changing of the lodestar amount based on any of the other *Johnson* factors. However, Plaintiff argues that the Court should increase the award considering Defendant's refusal to settle the matter, and Defendant argues that the Court should decrease the award given the delays due to COVID-19. As previously mentioned, the Court has already considered the time expended in this litigation in decreasing the number of hours used for the lodestar calculation. Thus, further reductions due to COVID-19 and other continuances would also "be impermissible double counting."[180] Furthermore, an increase in the award due to Defendant's refusal to settle the matter is not warranted, as Defendant was under no obligation to settle and ultimately was successful in

---

[178] *Saizan,* 448 F.3d at 800 (citation omitted).

[179] *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 771–72 (5th Cir. 1996) (citation omitted).

[180] *Saizan,* 448 F.3d at 800 (citation omitted).

defending against four of Plaintiff's five claims. Thus, given the presumption that the lodestar calculation is reasonable, the Court does not adjust the lodestar amount of $194,146.88 in attorney's fees.[181]

### E.  Expenses

In addition to attorney's fees, Plaintiff requests an additional $4,330.00 in expenses.[182] Plaintiff provides an itemized "Cost/Expense Application" in support of this request. Defendant does not contest any of the itemized expenses. The expenses requested are reasonable for a case that went to trial and involved numerous depositions and witnesses. Accordingly, the expenses Plaintiff requests are recoverable.

### V. Conclusion

For the reasons discussed above, the Court awards Plaintiff attorney's fees in the amount of $194,146.88 and expenses in the amount of $4,330.00 for a total award of $198,476.88. Accordingly,

---

[181] *Watkins*, 7 F.3d 453, 457.

[182] Rec. Doc. 291-6 at 1.

**IT IS HEREBY ORDERED** that Plaintiff Mark Richard's Motion for Attorney's Fees[183] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff Mark Richard is hereby awarded $198,476.88 in attorney's fees and costs recoverable against Defendant Sheriff Randy Smith.

**NEW ORLEANS, LOUISIANA**, this  27th  day of September, 2022.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[183] Rec. Doc. 291.